UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
LISA FAVORITO,

                    Plaintiff,              **REPORT AND**
                                             **RECOMMENDATION**
       -against-                  CV 13-3419 (JS)(AYS)

LONGWOOD CENTRAL SCHOOL DISTRICT,
LONGWOOD CENTRAL SCHOOL DISTRICT
BOARD OF EDUCATION,

                    Defendants.
---------------------------------------------------------------X
APPEARANCES:

LAW OFFICE OF STEVEN A. MORELLI, P.C.
BY: RUSSELL J. PLATZEK, ESQ.
Attorneys for Plaintiff
1461 Franklin Avenue
Garden City, New York 11530

SOKOLOFF STERN LLP
Attorneys for Defendants
BY: ADAM J. KLEINBERG, ESQ.
     KAITLYN R. MCKENNA, ESQ.
179 Westbury Avenue
Carle Place, New York 11514


**SHIELDS, Magistrate Judge:**

      This is an employment discrimination action commenced by Plaintiff Lisa Favorito

("Favorito" or "Plaintiff") against her employer the Longwood Central School District

("Longwood or the "District"). In addition to naming the School District as a Defendant,

Favorito names as a Defendant the Longwood Central School District Board of Education

(collectively "Defendants"). Plaintiff is a tenured foreign language teacher who has been

continuously employed at Longwood since 2002. She alleges a gender-based equal protection

claim of employment discrimination pursuant to 42 U.S.C. §1983 ("Section 1983") as well as a

Section 1983 claim pursuant to the principles set forth in <u>Monell v. Dep't. of Social Servs.</u>, 436 U.S. 658 (1978). The latter claim alleges that Defendants' discriminatory actions were undertaken pursuant to an unconstitutional policy. Finally, Plaintiff alleges a gender-based hostile work environment claim pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII").[1]

While this case was not commenced until 2013, Plaintiff's claims all stem from a 2009 teaching reassignment that followed her return from a 2007 maternity leave. Plaintiff argues that her 2009 reassignment, and a variety of subsequent teaching assignments thereafter, constitute adverse employment actions made on account of her gender. Plaintiff's hostile environment claim relies on incidents, discussed below, that are alleged to have occurred over the course of Plaintiff's thirteen year employment at Longwood. Presently before this court is Defendants' motion for summary judgment, which has been referred to this court for a Report and Recommendation. For the reasons set forth below, it is respectfully recommended that Defendants' motion for summary judgment be granted.

BACKGROUND

I.      <u>Facts: Basis of Facts Recited Herein</u>

The facts set forth below are drawn largely from the parties' statements of material facts submitted pursuant to Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Rule 56.1 Statements"). Those statements consist of Defendants' 46 page, 466 paragraph Rule 56.1 Statement ("Defendants' Statement" or "Def. 56.1") and Plaintiff's opposing 52 page, 481 paragraph Rule 56.1 Statement ("Plaintiff's

_____

[1]      Plaintiff's Complaint originally set forth additional causes of action which have since been discontinued. <u>See</u> Stipulation dated August 23, 2014 appearing as Docket Entry ("DE") No. 7 herein and pre-motion conference letter dated 11/24/14 DE No. 25.

Statement" or "Pl. 56.1"). While Plaintiff's Statement adds an additional fifteen paragraphs, her statement agrees to the vast majority of the factual statements set forth in Defendants' Statement. Indeed, there is outright agreement, without comment, as to 404 of the 466 paragraphs contained in Defendants' Statement. Plaintiff has added explanatory factual assertions, with respect to 58 of those paragraphs. Plaintiff outright disputes only four of Defendants' factual assertions.

In addition to the agreed upon facts, Plaintiff offers two sworn statements in opposition to Defendants' motion. First, Plaintiff offers the Sworn Declaration of Levi McIntyre ("McIntyre"). DE 38-1. McIntyre was the principal of the District Junior High School from 1993 until his 2014 retirement. DE 38.1 ¶ 2. Plaintiff also offers the Sworn Affidavit of Mariana Gil ("Gil") DE 38-2. Like, Plaintiff, Gil was a Spanish language teacher at the District.

Despite Plaintiff's disagreement with certain facts, and her submission of the two statements referred to above, there is broad agreement as to the facts in this case. That agreement allows the Court to decide this summary judgment matter on a clear record of agreed facts not in dispute. The Court turns now to discuss those facts.

A.    Plaintiff's Employment: 2002-2005

Plaintiff was first employed at Longwood in 2002. Def. 56.1 ¶ 23.[2] At the time of her hiring, Plaintiff was certified as both a Spanish language, and special education teacher. Def. 56.1 ¶15. Plaintiff's initial teaching assignment at Longwood was at a District Junior High School (the "JHS") where Plaintiff was assigned to teach mainstream Spanish classes. Plaintiff's principal was McIntyre, who agreed with the District's June 2005 decision to award Plaintiff

---

[2]    Unless otherwise noted, references in this opinion to Defendants' Rule 56.1 Statement are not disputed in Plaintiff's 56.1 Statement. To the contrary, each such reference is specifically referred to in Plaintiff's 56.1 Statement as "not in dispute."

tenure. Def. 56.1 ¶ 29; DE 38-1¶ 5. Favorito remains employed at Longwood to date. Def. 56.1 ¶ 26.

    B.    <u>Plaintiff's 2007-2009 Maternity, FMLA and Extended Leaves of Absence</u>

In October of 2007, Plaintiff took maternity leave from her teaching position for the birth of her first child. Def. 56.1 ¶30. Although she was scheduled to return later in 2007, Plaintiff decided to extend her leave through February of 2008, by taking unpaid leave pursuant to the Family and Medical Leave Act ("FMLA"). Def. 56.1 ¶¶ 37-38. While it is undisputed that Plaintiff did not, in fact, return in February of 2008 -- or indeed for the remainder of the 2008 school year -- it is not clear when District personnel first learned of Plaintiff's decision to extend her leave from February 2008 until the beginning of the following school year.

At the same time that Plaintiff was out on maternity/FMLA leave, Regina Casale ("Casale"), who is also a female Spanish teacher at the District, was out on sabbatical leave. Def. 56.1 ¶ 43-44. At the time of her sabbatical, Casale was assigned to teach Spanish at Longwood's High School (the "High School"). While Plaintiff's JHS Spanish classes were covered by a leave replacement teacher named Amy Reinhardt, Def. 56.1 ¶ 34, Casale's High School Spanish classes were covered, at the same time, by a leave replacement teacher named Patricia Lott ("Lott"). Def. 56.1 ¶ 46. Like Plaintiff, Casale was scheduled to return from her leave in February of 2008. Def. 56.1 ¶ 55. Since Casale was returning mid-year, her leave replacement, Lott, would have to be moved out of her position at the High School to accommodate Casale's return.

Defendants state, and Plaintiff does not dispute, that Lott, Casale's leave replacement, was doing an exceptional job in the High School. Nor does Plaintiff dispute that it would have been disruptive to students to replace Lott with Casale mid-year. Def. 56.1 ¶ 71-75. Therefore,

instead of moving Casale back into her High School position upon her return, the decision was made to allow Lott to remain in Casale's High School position, and move Casale to the JHS. Def. 56.1 ¶ 49; 85. This administrative move essentially swapped Plaintiff's and Casale's positions. Def. 56.1 ¶ 53. Thus Casale, who returned to the District in February of 2008, took Plaintiff's former JHS position, and the District made the decision to assign Plaintiff (who remained on leave) to teach at the High School. To date, Casale remains as a Spanish teacher at the JHS. Def. 56.1 ¶ 85.

While Plaintiff contends that the decision to move her from the JHS to the High School was based upon a personality conflict between Casale and Ms. Ammirato ("Ammirato") the Longwood LOTE[3] department chairperson, Ammirato testified that she had a fine working relationship with Casale and did not request the reassignment. Def. 56.1 ¶ 76-78.

As noted, Plaintiff has submitted the declaration of her JHS principal Levi McIntyre. DE 38.1. In his declaration, McIntyre states his familiarity with Favorito, and his high opinion of her ability as a teacher. DE 31.8 ¶ 5. He states that he was informed of the decision to transfer Favorito out of his school and into the High School. McIntyre thought that the transfer decision was "strange," since it was his "understanding that upon her return, Ms. Favorito would be coming back" to the JHS. DE 31.8 ¶ 10. McIntyre states that he inquired as to the reason for Plaintiff's transfer, but was never given a reason. He further states that he would have been happy to have Plaintiff remain at the JHS. DE 31.8 ¶ 11-12;15.

Although her maternity and FMLA leave expired in February of 2008, Plaintiff sought to extend her leave through the end of August 2008. The District granted that request, as well as Plaintiff's later request to further extend her leave for another full year, through the end of

---

[3] "LOTE" is an acronym standing for "Languages Other Than English."

August of 2009. Def. 56.1 ¶ 89-91. As discussed below, Plaintiff has had a variety of teaching assignments since her return to the District, including semesters during which she split her duties between the High School and the JHS. She has never been permanently reassigned, however, to her 2007 pre-maternity leave position teaching solely at the JHS.

      C.      <u>Plaintiff's 2009 Return to Longwood</u>

In September of 2009, Plaintiff returned to the District from her maternity leave, after a nearly two year absence. Def. 56.1 ¶ 107. Prior to her return, Plaintiff corresponded with Ammirato, who contacted Plaintiff via an email dated February 23, 2009. Def. 56.1 ¶108. While it is clear that Ammirato is not the final decision maker with respect to teaching assignments, it is also clear that, as the High School LOTE chairperson, she is responsible for curriculum, sectioning, and any other issues related to the delivery of instruction to high school students. Def. 56.1 ¶ 94-98. In her email to Plaintiff, Ammirato expressed sympathy with the difficulty of readjusting to a working routine "from a mommy perspective," and told Plaintiff that she would most likely be able to schedule Plaintiff's first period of the day as a "prep" so that the morning would be "a little easier." Def. 56.1 ¶ 110. While Plaintiff was, at the time, the only Spanish language teacher who was also certified in special education, she advised Ammirato that she preferred not to teach special education classes. She further stated that it was her preference to teach higher level classes, but said that she would "teach what I am given." Def. 56.1 ¶ 116-120.

In addition to corresponding with Ammirato prior to her September 2009 return to the District, Plaintiff met with Dr. Gerstenlauer, the District Superintendent ("Gerstenlauer") and Donald Murphy, the high school principal ("Murphy") to discuss her anticipated return. Def. 56.1 ¶¶ 106-141. At her meeting with Gerstenlauer, which lasted only a few minutes, Def. 56.1 ¶ 124, Favorito expressed her concerns about working with Ammirato, and stated that she felt

targeted for reassignment to the High School because she had a baby. Def. 56.1 ¶¶ 125, 129. Despite expressing concerns about Ammirato, Favorito concedes that at the time of her meeting with Gerstenlauer, she had only limited contact, and no negative interaction with Ammirato. Def. 56.1 ¶ 132. Plaintiff also agrees that the only way that Casale could have been reassigned to the JHS in 2008 (allowing Lott to stay at the High School for the nearly two year period of Plaintiff's absence) was to reassign Plaintiff to the High School. Def. 56.1 ¶ 128.

Plaintiff's meeting with High School Principal Murphy took place approximately two weeks after her meeting with Gerstenlauer. Like the meeting with Gerstenlauer, the meeting with Murphy took place prior to Plaintiff's September 2009 return. Although Plaintiff requested that Ammirato not be present at the meeting, Ammirato requested to be there, and the meeting was held in her presence. Def. 56.1 ¶ 133-36. Plaintiff states that Murphy acted aggressively toward her at the meeting and that he "wanted to exert his position of authority" over Plaintiff. Def. 56.1 ¶ 137.1-.5. Nonetheless, at the meeting with Murphy and Ammirato, Plaintiff was advised that, upon her return to the District, her teaching duties would be split between the High School and the JHS – a schedule that Plaintiff previously expressed a willingness to work. Def. 56.1 ¶139, 141, 157-59. Plaintiff's split schedule allowed her greater flexibility in getting her daughter to school in the morning, and therefore helped with her childcare situation. Def. 56.1 ¶ 161.

    D.    <u>The Spring 2010 Request to Transfer</u>

In March of 2010, Plaintiff made a request to be reassigned to the JHS for the upcoming school year. Def. 56.1 ¶ 218. While it appears that there may have been some delay in putting Plaintiff's name on the transfer request list, it is clear that her name was ultimately placed on that list. <u>See</u> Def. 56.1 ¶ 220-222. Plaintiff does not refute the factual allegation that there was

neither a full time opening at the JHS that school year, nor a "need to reassign anyone there." Def. 56.1 ¶ 226. It is therefore no surprise that Plaintiff was assigned again to work full time at the High School. While Plaintiff would have preferred a schedule free of Spanish Level 1 classes, her assigned schedule included such classes, but also included teaching upper level Spanish classes. Def. 56.1 ¶¶ 250-53.

Plaintiff notes that a teacher named Maria Falcone ("Falcone") was given a split High School/JHS schedule for the 2010-2011 school year, and quarrels with the decision to give that schedule to Falcone, and not to Plaintiff. Def. 56.1 ¶ 227-29. Specifically, Plaintiff argues that Falcone was not certified to teach Spanish and Plaintiff, as a certified Spanish teacher, should have been assigned the split schedule. Def. 56.1 ¶ 229. Plaintiff, however, comes forward with no evidence that Falcone taught Spanish at the JHS during the school year at issue. Defendants, on the other hand, have come forward with uncontroverted documents showing that Falcone taught only French during the semester at issue. Def. 56.1 ¶234.

E.    Plaintiff's 2010 Pregnancy, Maternity Leave and 2010-2011 Schedule

Plaintiff became pregnant during the 2010 school year and was due to give birth in November of 2010. Def. 56.1 ¶ 240-41. She therefore informed the District of her intent to take maternity leave at or around November of 2010, and for the remainder of the 2010/2011 school year. Def. 56.1 ¶ 241-42. Therefore, the District knew that it would be necessary to hire a leave replacement to cover Plaintiff's position from some time during the Fall of 2010 through June of 2011.  Def. 56.1 ¶ 245.  Plaintiff was, as noted, assigned to teach solely at the High School for the 2010/2011 school year. While she was disappointed that she was denied the opportunity to teach at both the JHS and High School, she was informed that one reason for the denial of that

schedule was the difficulty in assigning a leave replacement to teach a split schedule. Def. 56.1 ¶247.

F.    <u>Plaintiff's 2011 Return to the District</u>

After giving birth to her son in November of 2010, Plaintiff extended her leave and did not return to the District to teach until September of 2011. Def. 56.1 ¶ 284-87. Prior to her return, she met with Maria Castro ("Castro") the High School principal who took over for Murphy. Def. 56.1 ¶ 288. Like her predecessors, Castro told Plaintiff that she was needed to teach at the High School. Def. 56.1 ¶ 294. Plaintiff describes her meeting with Castro as amicable. Def. 56.1 ¶ 290. Plaintiff states that she advised Castro that she felt she was treated differently from others upon her return from maternity leave. Def. 56.1 ¶ 298. Plaintiff states that Castro told her to speak to her union about a transfer. Plaintiff concedes that her union representatives told Plaintiff that she had no actionable grievance. Def. 56.1 ¶ 300-302.

As in previous years, Plaintiff expressed her desire to teach only upper level Spanish classes. Def. 56.1 ¶303. She also stated that she was advised of an opening to teach Spanish at the JHS, and her knowledge that such position was taught by Falcone (who was not certified to teach Spanish). She also knew that Falcone was teaching a split schedule, while Plaintiff's request for such a schedule was denied. Def. 56.1 ¶308-09. Plaintiff does not dispute that split schedules are not favored by the District as they require travel, reporting to different supervisors, and compromise a teacher's ability to participate in a common planning period. Def. 56.1 ¶ 315-18.

G.    <u>2012-2013 School Year</u>

During the 2012-2013 school year, Plaintiff was again assigned to teach full time at the High School. <u>See</u> Def. 56.1 ¶368-378. While Plaintiff was not assigned to the JHS, the District

hired a new teacher to teach Spanish on a part-time basis at the JHS. That teacher taught three classes at the JHS for a period of only one year. Def. 56.1 ¶373-74. Plaintiff's High School teaching schedule consisted of five separate classes, only two of which are what she refers to as the least desirable level one classes. See Def. 56.1 ¶377-78.

The declaration of Levi McIntyre (the "McIntyre Declaration"), submitted by Plaintiff in opposition to this motion, confirms that the District hired a new teacher to teach three classes at the JHS for the 2012 -2013 school year. DE 31.1 ¶ 15. McIntyre states that if he were consulted on this hire, he would have been happy to have Plaintiff teach those three classes. DE 31.1 ¶ 15. McIntyre further states that when he inquired as to the reason why Plaintiff was not assigned to the JHS, he was told only that Favorito had "a full schedule at the high school." DE 31.1 ¶ 16.

### H. Evidence Regarding Plaintiff's Husband and Child Care Arrangements

Plaintiff claims, inter alia, that the schedule imposed upon her as a result of teaching at the High School had a negative impact on her husband's career, and their child care arrangements. This claim, no doubt, led to deposition testimony before the court that includes information regarding Plaintiff's husband's work history and schedule. Essentially, it appears that both Plaintiff and her husband were required to be at work early in the morning. When Plaintiff worked at the High School, and her husband was responsible for taking their child to day care, he would often be late for work or meetings. Pl. 56.1 ¶ 456.5-456.11. Plaintiff thus complains that as a result of her being assigned to the High School, her husband was "forced" to be the one who dropped off their child at day care. This errand allegedly made Mr. Favorito late for work, negatively impacting his standing at his company. Id.; see Pl. 56.1 ¶ 406.1

### I. Hostile Environment Allegations

Plaintiff alleges that she began to suffer a hostile working environment upon her return to school in September of 2009. Def. 56.1 ¶ 175. In support of her claim, Plaintiff complains about her treatment by Murphy, his successor Maria Castro, Assistant Principal Melissa Conlon, and Ammirato.[4]

i.    Allegations as to Murphy

Plaintiff complains of Murphy's conduct toward her at the 2009 meeting discussed above. Def. 56.1 ¶178. Specifically, as noted above, Plaintiff claims that Murphy acted aggressively toward her at the meeting, and waived his hand dismissively at her. Plaintiff further takes issue with comments made by Murphy that referred to instruction ending early in Plaintiff's classroom. It is clear, however, that Plaintiff explained the timing of instruction in her classroom to Murphy, and the matter was quickly clarified. Def. 56.1 ¶ 195-201. It is also clear that Plaintiff never received a poor evaluation from Murphy. Indeed, Murphy gave Plaintiff a positive evaluation at the end of the 2010 school year. Def. 56.1 ¶ 210.

ii.    Allegations as to Castro

Plaintiff's allegations reference interactions with Castro. With the exception of characterizing Castro's decision to assign Plaintiff to the High School as "hostile," there is not a single allegation of any hostile interaction between Favorito and Castro. To the contrary, the record reflects an amicable relationship between Plaintiff and Castro. As with all other administrators, there is an absence of any negative performance evaluations.

iii.    Allegations as to Conlon

---

[4]    Although not dispositive, it is noteworthy that Plaintiff never complained to any administrator about the allegedly hostile treatment by Murphy, Castro, Conlon, Ammirato or anyone else. Def. 56.1 ¶ 194; see Def. 56.1 ¶ 219.

During 2011, Plaintiff's high school class was observed and evaluated by Assistant Principal Melissa Conlon. Def. 56.1 ¶ 216;335.  While Plaintiff alleges that she was singled out for unannounced observations, Plaintiff agrees that Conlon emailed Plaintiff, giving her notice of a two week window during which her observation would take place, and, during 2010, rescheduled an observation due to Plaintiff's recent return from an illness.  Def. 56.1 ¶¶ 211; 216-17. Plaintiff similarly does not dispute that after a November 2011 observation, Conlon gave Plaintiff all satisfactory ratings, along with nothing more than typical recommendations. Def. 56.1 ¶336-38.  There is also evidence of social interaction between Plaintiff and Conlon. Specifically, Plaintiff invited Conlon to be a guest at Plaintiff's daughter's birthday party. Def. 56.1 ¶ 381.

iv.    Allegations as to Ammirato

Plaintiff's hostile environment claims also focus on her alleged treatment by Ammirato, objecting, inter alia, to Ammirato's "overall vibe."  Def. 56.1 ¶178. Plaintiff complains that Ammirato "micromanaged" her, including commenting on one occasion as to Plaintiff's decision to leave a meeting early to use the ladies' room.  Def. 56.1 ¶¶ 187;193. Plaintiff also takes issue with Ammirato's comment scolding Plaintiff for bringing in donuts for students, which is apparently against District rules.  See Def. 56.1 ¶280-83.

Plaintiff submits the Declaration of Mariana Gil ("Gil") in support of her claims regarding Ammirato. (the "Gil Declaration") DE 38-2. As noted, Gil is a District Spanish teacher. The Gil Declaration refers to two incidents during which Ammirato is alleged to have made negative comments. The first comment does not relate to Plaintiff, but the second allegedly does. As to the former, Gil refers to a complaint made by Ammirato approximately four years ago, when Ammirato complained about having to make scheduling changes to accommodate

teachers with "illnesses such as cancer." DE 38-2 ¶ 5. Gil states that she was being treated for

cancer at the time. Id. Second, Gil refers to a comment made by Ammirato at a common

planning meeting held approximately two years ago. DE 38-2 ¶ 6. At that meeting, Ammirato is

alleged to have stated her surprise that Gil "surrounded herself with certain individuals." DE 38-

2 ¶ 6. When Gil asked Ammirato who she was referring to, Ammirato is alleged to have

mentioned two colleagues, one of whom was Favorito. Id.

DISCUSSION

I.      Legal Principles: Standards on Summary Judgment

        Summary judgment is appropriately granted only where "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

"An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict

for the non-moving party. SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133, 137 (2d Cir.

2009). A fact is "material" if it might affect the outcome of the litigation under the relevant law.

Id. The party moving for summary judgment is first responsible for demonstrating the absence of

any genuine issue of material fact. Celotex, 477 U.S. at 322. Summary judgment is appropriate

when the non-moving party "fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at

trial." Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002) (quoting Celotex, 477 U.S. at 322).

        In deciding a motion for summary judgment, the Court must "resolve all ambiguities and

draw all reasonable inferences against the moving party". Tolbert v. Smith, 2015 WL 3875237

*4 (2d Cir. 2015); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587

(1986). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise, Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995), and must do more than show that there is "some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Instead, the non-moving party must "set forth significant, probative evidence on which a reasonable fact-finder could decide" in her favor. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256–57 (1986).

While the Second Circuit often notes the caution to be employed when deciding whether to grant summary judgment in cases where an employer's intent is at issue, that court has noted similarly that "the salutary purposes of summary judgment-avoiding protracted and harassing trials-apply no less to discrimination cases than to ... other areas of litigation." Tolbert, 2015 WL 3875237 *4; see also Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008) (summary judgment appropriate to avoid "protracted, expensive and harassing trials"); Abdu–Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) (it is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases"); Kohutka v. Town of Hempstead, 994 F.Supp.2d 305, 316 (E.D.N.Y. 2014).

With these standards in mind, the Court turns to discuss the merits of the motion.

II.     Stating an Equal Protection Employment Discrimination Claim

Title VII prohibits workplace discrimination based upon gender. See 42 U.S.C. §2000e-2(a). Protection against gender discrimination is similarly prohibited, in the public law employment context, by the Equal Protection Clause of the Constitution. A public employee is deprived of her Equal Protection right to be free from gender discrimination "when she is treated differently from other similarly situated employees, thus suffering 'disparate treatment because of gender.' " Potash v. Florida Union Free School Dist., 972 F.Supp.2d 557, 577 (S.D.N.Y.

14

2013) (quoting <u>Annis v. Cnty. of Westchester</u>, 136 F.3d 239, 245 (2d Cir. 1998) (quoting

<u>Saulpaugh v. Monroe Community Hosp.</u>, 4 F.3d 134, 144 (2d Cir. 1993)). With certain

exceptions not relevant here, the elements of a Title VII claim of gender discrimination, and a

gender-based Equal Protection claim are the same.  They are subject to the same summary

judgment analysis discussed below, and the two claims "must stand or fall together." <u>Vega v.

Hempstead Union Free School Dist.</u>, 2014 WL 2157536 *3 (E.D.N.Y. 2014) (quoting <u>Feingold

v. New York</u>, 366 F.3d 138, 159 (2d Cir. 2004)).

  A. *<u>McDonnell Douglas</u> Framework*

  On a motion for summary judgment, claims of gender discrimination, whether brought

pursuant to Section 1983 or Title VII, are analyzed using the familiar <u>McDonnell Douglas</u>

burden shifting test first developed for Title VII claims. <u>Vivenzio v. City of Syracuse</u>, 611 F.3d

98, 106 (2d Cir. 2010); <u>Vega</u>, 2014 WL 2157536 *2; <u>Sotomayor v. City of New York</u>, 862

F.Supp.2d 226, 251 (E.D.N.Y. 2012); <u>Flaherty v. Massapequa Public Schools</u>, 752 F.Supp.2d

286, 295–96 (E.D.N.Y. 2010), <u>aff'd</u>., 462 Fed.Appx. 38 (2d Cir. 2012).

  The first step in that test requires plaintiff to establish a <u>prima</u> <u>facie</u> case of discrimination

by showing: (1) membership in a protected class; (2) qualification for her position; (3) adverse

employment action; and (4) that such action occurred under circumstances giving rise to an

inference of discrimination.  <u>Ruiz v. County of Rockland</u>, 609 F.3d 486, 491–92 (2d Cir. 2010);

<u>Leibowitz v. Cornell University</u>, 584 F.3d 487, 498 (2d Cir. 2009); <u>Filippi v. Elmont Union Free

School Dist. Bd. of Educ.</u>, 2012 WL 4483046 *9-10 (E.D.N.Y. 2012).

  The Second Circuit has explained that plaintiff's <u>prima</u> <u>facie</u> burden is <u>de</u> <u>minimis</u>. <u>Abdu–

Brisson</u>, 239 F.3d at 467. Nonetheless, in order to state a <u>prima</u> <u>facie</u> case of discrimination, "a

plaintiff must proffer some admissible evidence of circumstances that would be sufficient to

permit an inference of discriminatory motive." <u>Bennett v. Watson Wyatt & Co.</u>, 136 F.Supp.2d 236, 246 (S.D.N.Y. 2001), <u>aff'd.</u>, 51 Fed. Appx. 55 (2d Cir. 2002). The burden is not met through reliance on unsupported assertions, <u>Goenaga</u>, 51 F.3d at 18, or "[s]tatements that are devoid of any specifics, but replete with conclusions." <u>Griffin v. Ambika Corp.</u>, 103 F.Supp.2d 297, 308 (S.D.N.Y. 2000) (quoting <u>Bickerstaff v. Vassar College</u>, 196 F.3d 435, 451-52 (2d Cir. 1999).

Once a plaintiff establishes all the elements of her <u>prima facie</u> case, the burden shifts to defendant to "articulate some legitimate, nondiscriminatory reason" for its conduct. <u>Leibowitz</u>, 584 F.3d at 498. Like plaintiff's <u>prima facie</u> burden, defendant's burden of showing legitimate non-discriminatory reasons is similarly "light." <u>Greenway v. Buffalo Hilton Hotel</u>, 143 F.3d 47, 52 (2d Cir. 1998). Thus, defendant is required only to "articulate an explanation that, if true, would connote lawful behavior." <u>Id</u>. "The burden is one of production, not persuasion." <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 142 (2000) (quoting <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 509 (1993)).

If the defendant satisfies this burden of production, plaintiff's <u>prima facie</u> presumption is rebutted, and "drops from the case." <u>Texas Dep't. of Community Affairs v. Burdine</u>, 450 U.S. 248, 255, 255 n. 10 (1981). The burden then shifts back to plaintiff "to demonstrate by competent evidence" that the reasons offered were "a pretext for discrimination." <u>Id</u>. At that point, the plaintiff "is given an opportunity to adduce admissible evidence that would be sufficient to permit a rational finder of fact to infer that the employer's proffered reason is pretext for an impermissible motivation." <u>Vivenzio</u>, 611 F.3d at 106 (quoting, <u>Howley v. Town of Stratford</u>, 217 F.3d 141, 150 (2d Cir. 2000)). Importantly, the ultimate burden of persuasion as to whether there was intentional discrimination "remains at all times with the plaintiff." <u>Burdine</u>, 450 U.S. at 253.

In the final summary judgment analysis, the court must consider all of the evidence properly presented, and "examine the record as a whole, just as a jury would, to determine whether a jury could reasonably find an invidious discriminatory purpose on the part of an employer." Byrnie v. Town of Cromwell Bd. of Educ., 243 F.3d 93, 102 (2d Cir. 2001).

B.     Elements of Plaintiff's *Prima Facie* Discrimination Case at Issue

As to Plaintiff's prima facie case, there is no question that as a female, Plaintiff is a member of a protected class. The court assumes, as do the Defendants for the purpose of this motion, that Plaintiff was qualified at all times for the JHS teaching position sought. At issue on this motion are the elements of: (1) whether Plaintiff suffered adverse employment action and, if so, (2) whether such action took place under circumstances giving rise to an inference of discrimination. The Court turns to outline the legal principles of those elements.

i.     First Element at Issue: Adverse Employment Action

Adverse employment action sufficient to satisfy plaintiff's prima facie case, is deemed to have occurred if an employee suffers "a materially adverse change in the terms and conditions of employment," i.e., a change that is "more disruptive than a mere inconvenience or an alteration of job responsibilities." Tolbert, 2015 WL 3875237 *5. Included among such actions are "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." Frisenda v. Inc. Vill. of Malverne, 775 F.Supp.2d 486, 510 (E.D.N.Y. 2011) (quoting Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999)).

Other lesser actions, including transfers or failure to grant a transfer request may, under certain circumstances, constitute adverse employment action. Thus, the Second Circuit has held that transfer "from an 'elite' division ... which provided prestige and opportunity for advancement, to a less prestigious unit with little opportunity for professional growth," may be

deemed adverse. de la Cruz v. New York City Human Res. Admin. Dep't of Soc. Serv., 82 F.3d

16, 21 (2d Cir. 1996); Pimentel v. City of New York, 2002 WL 977535 *3 (S.D.N.Y. 2002). To

constitute adverse employment action, however, the transfer at issue must amount to more than a

mere change in schedule or location. Kessler v. Westchester Cty. Dep't of Soc. Servs., 461 F.3d

199, 207 (2d Cir. 2006); Dasrath v. Stony Brook Univ. Med. Cent., 2015 WL 1223797 *10

(E.D.N.Y. 2015) (changes in schedule unaccompanied by a reduction in wages or job

responsibilities, held not to constitute adverse employment action). Similarly, denial of a request

to transfer to a location more convenient to the employee's home, unaccompanied by any

significant change in duties or opportunities for advancement, does not constitute adverse

employment action. Pimental, 2002 WL 977535 *4. Importantly, where an assignment falls

within the duties of a plaintiff's position, "an undesirable assignment does not rise to the level of

an adverse employment action." Vale v. Great Neck Water Pollution Control Dist., 2015 WL

248603 * 5 (E.D.N.Y. 2015) (quoting, Williams v. New York City Housing Authority, 2008 WL

2695139 *3 (S.D.N.Y. 2008), aff'd, 361 Fed. Appx. 220 (2d Cir. 2010)).

 Administrative decisions transferring teaching locations and/or changing teaching

assignments have been the subject of numerous employment discrimination claims brought in

this Circuit. Indeed, cases reaching the Second Circuit court of Appeals have decided whether

such claims can amount to adverse employment action sufficient to satisfy plaintiff's prima facie

burden. In Galabya v. New York City Bd. of Educ., 202 F.3d 636 (2d Cir. 2000) for example,

the Second Circuit affirmed the district court's grant of summary judgment on the ground that

the plaintiff teacher could not show adverse employment action.

 Plaintiff in Galabya alleged adverse action in the form of assignment to special education

classes, and transfer to a school deemed less desirable, along with the denial of a request for

assignment to a school computer lab. Id. at 639-40. Holding that plaintiff's claim in Galabya failed to properly state adverse action, the Second Circuit affirmed the district court's grant of summary judgment. The appellate court was careful to distinguish the facts in Galabya from other education-setting transfer cases that might survive summary judgment. Thus, the Court noted that transfers might constitute adverse employment action where the transfer, in fact, "results in a change in responsibilities so significant as to constitute a setback to the plaintiff's career." Id. at 641; see Sotomayor, 862 F. Supp.2d at 254 (for change in teacher's assignment to be materially adverse, such assignments must at least be shown to have been "materially less prestigious, materially less suited to h[er] skills and expertise, or materially less conducive to career advancement").

The issue of whether a transfer of job duties and/or location can be sufficiently "adverse," to state a prima facie case of employment discrimination entails a factual inquiry. Nonetheless, courts in this circuit have not hesitated to dismiss such claims at the summary judgment stage for failure to show adverse action. See, e.g., Das v. Consolidated School Dist. of New Britain, 369 Fed. Appx. 186, 2010 WL 786976 *1 (2d Cir. 2010) (affirming grant of summary judgment to school district on ground, inter alia, that transfer from junior high school to high school was not adverse employment action sufficient to support prima facie case of disparate treatment); Leon v. Dep't. of Educ., 6 F.Supp.3d 184, 202-03 (E.D.N.Y. 2014) (deprival of "top-choice teaching assignment" held not to constitute adverse employment action), aff'd. in relevant part and vacated on other grounds, 2015 WL 2444502 (2d Cir. 2015); Vega, 2014 WL 2157536 *4-5; Sotomayor, 862 F. Supp.2d at 256 (E.D.N.Y. 2012) (no adverse employment action stated where plaintiff complained of "undesireable classroom assignments" and of the failure "to scrupulously honor each of [plaintiff's] teaching preferences"); Missick v. City of New York, 707 F.Supp.2d

336, 349 n.5 (E.D.N.Y. 2010) (teacher's reassignment to teach sixth grade "not recognized as being adverse employment action"); see also Filippi, 2012 WL4483046 *10-11(granting summary judgment to defendant school district on ground, inter alia, that transfer of school secretary to different building did not constitute adverse employment action); Johnson v. Eastchester Union Free School Dist., 211 F.Supp.2d 514, 517-18 (S.D.N.Y. 2002) (summary judgment granted to school district where employee's allegation that change in hours and location were "very inconvenient" held insufficient to state prima facie element of adverse employment action).

 Importantly, a plaintiff seeking to avoid summary judgment in a case alleging adverse employment action based upon a transfer of teaching responsibilities or location must come forward with "objective indicia of material disadvantage . . . subjective, personal disappointment" is not enough. Beyer v. County of Nassau, 524 F.3d 160, 163-64 (2d Cir. 2008) (citations omitted).

 ii. Second Element at Issue: Inference of Discrimination

 An inference of discrimination may be drawn either from "direct evidence of discriminatory intent," or a showing of disparate treatment compared to others who are similarly situated. Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000). As to the latter method, a showing that an employer treated plaintiff less favorably than other similarly situated employees, outside of plaintiff's protected group, is a "recognized method" for raising an inference of discrimination. Sotomayor, 862 F. Supp.2d at 254; see Das, 369 Fed. Appx. 186, 189, 2010 WL 786976 *2 ("[a] plaintiff relying on disparate treatment evidence must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself")

(quoting, <u>Mandell v. County of Suffolk</u>, 316 F.3d 368, 379 (2d Cir. 2003) (internal quotation marks omitted)); <u>Vega</u>, 2014 WL 2157536 *3.

III.    <u>Disposition of the Motion as to the Section 1983 Equal Protection Claim</u>

      A.    <u>Plaintiff Fails to Show Adverse Employment Action</u>

Plaintiff's claims of disparate treatment stem from her 2009 transfer to the High School. Aside from the fact that certain of Plaintiff's allegations are likely time barred, each and every claim of disparate treatment focuses only on Plaintiff's various teaching assignments.[5] Specifically, each action alleged complains either of Plaintiff's location, the level of Spanish classes she was assigned to teach, and/or the time of day she was required to report.

As to location, Plaintiff claims adverse employment action when she was: (1) transferred to the High School in 2009; (2) denied a transfer to the JHS in 2010; (3) denied the opportunity to teach a split JHS/High School schedule in 2011 and, (4) denied full-time assignment to the JHS in 2012-2013. As to class assignment, Plaintiff complains of her assignments to teach lower level, as opposed to advanced, Spanish language courses. Finally, Plaintiff complains that the early arrival required for High School teachers is adverse because it made her child care arrangements difficult, "forcing" her husband to take their child to day care.

The case law is clear -- none of these claims constitute adverse action sufficient to support a claim. Importantly, Plaintiff states nowhere that her location assignment to the High School instead of the JHS was somehow less prestigious or outside of her field of expertise.

---

[5]    Defendants' moving memorandum of law contains the argument that any claims arising from actions pre-dating June 14, 2010 (three years prior to the commencement of this action) are time-barred. Def. Mem. DE 33 at 12-13. Plaintiff's responsive memorandum fails to address this argument, thus arguably conceding that certain factual claims should be dismissed on statute of limitations grounds. Even assuming such claims to be timely, they fail, for the reasons set forth herein, on the merits.

Indeed, there is no evidence, outside of the assignment itself, to support Plaintiff's claim that such assignment was adverse action. The Second Circuit and courts within this District have held clearly that such allegations are insufficient to allege adverse employment action. Galabya, 202 F.3d at 641; see e.g., Taylor v. New York City Dept. of Educ., 2012 WL 5989874 *8 (E.D.N.Y. 2012) ("teaching assignment must be 'materially less prestigious, materially less suited to [plaintiff's] skills and expertise, or materially less conducive to career advancement' in order to qualify as an adverse employment action") (citations omitted). Indeed, in Das, 2010 WL 786976 (2d Cir. 2010), the Second Circuit affirmed a grant of summary judgment in a case involving facts strikingly similar to those presented here. There, the court agreed that the plaintiff/teacher failed to show adverse employment action as a result of her transfer from a junior high to high school teaching position. Id. 2010 WL 786976 *1; see also Filippi, 2012 WL4483046 *10-11(transfer of school secretary to different building held not to constitute adverse employment action).

Nor do Plaintiff's allegations with respect to the levels of Spanish assigned adequately allege adverse action. With respect to such claims, Plaintiff states nothing other than her own personal preference as to the level of Spanish she would have liked to teach. The record reflects not only that level one Spanish classes are taught at both the JHS and the High School, but also that Plaintiff was, indeed, often assigned to teach the upper level Spanish classes requested– just not as many as she might have preferred. There is no evidence that Plaintiff was asked to teach levels of Spanish outside of her field of expertise, or to support any claim that teaching lower level Spanish classes is somehow less prestigious or afforded Plaintiff less opportunity for advancement. On the contrary, the record is clear that Plaintiff was qualified to teach lower level Spanish, and her teaching assignments had no impact on her career advancement. Under these

circumstances, any change in teaching assignment cannot be deemed adverse.  See Sotomayor, 862 F.Supp.2d at 254.

Finally, the early arrival required for High School teachers, which appears to drive all of Plaintiff's claims, does not constitute adverse employment action. Changes in schedule or commute, while inconvenient on a personal level, do not constitute adverse employment action. Galabya, 202 F.3d at 639-40; Taylor, 2012 WL 5989874 *8 (E.D.N.Y. 2012) (allegation that "working closer to home would be more convenient" fails to show adverse employment action); Antonmarchi v. Consolidated Edison Co. of New York, Inc., 2008 WL 4444609 *14 (S.D.N.Y. 2008) ("unfavorable hours do not constitute adverse employment action"); Johnson, 211 F. Supp.2d at 517-18. Plaintiff's allegations regarding the negative impact on her husband's commute are completely irrelevant to her claim. That Plaintiff's husband was made to share child care responsibilities, by ensuring that their children arrived at day care at a certain hour, has nothing to do with the District's decisions regarding Plaintiff's work assignment.

Plaintiff's attempt to distinguish the foregoing clear precedent by reliance on Rodriguez v. Board of Ed. of Eastchester Union Free School Dist., 620 F.2d 362 (2d Cir. 1980), is misplaced. There, the Second Circuit found that the plaintiff art teacher stated a claim of adverse employment action based upon her reassignment from a junior high school position to an elementary school. In that case, however, the reassignment placed plaintiff in a position "profoundly different" from her prior position and "render[ed] utterly useless her twenty years of experience and study in developing art programs for middle school children." Rodriguez, 620 F.2d at 366.  The particular facts alleged in Rodriguez place that case squarely within the category of cases, referenced above, where a transferred teacher can show adverse action by pointing to "objective indicia of material disadvantage." Beyer, 524 F.3d at 163-64.  Plaintiff

here comes forward with no such facts. Instead, as a plaintiff alleging only subjective disappointment at her schedule, her claim is properly subject to summary dismissal.

Nor do <u>Gibson v. American Broadcasting Companies, Inc.</u>, 892 F.2d 1128 (2d Cir.1989) or <u>Fierro v. City of New York</u>, 591 F.Supp.2d 431(S.D.N.Y. 2008), also relied upon by Plaintiff, require a different result. In <u>Gibson</u>, the plaintiff came forward with similarly situated comparator evidence showing that plaintiff was the only employee who was never allowed a weekend off. <u>Gibson</u>, 892 F.2d at 1134. While such stark disparate scheduling might support a claim of adverse action, no such circumstances are present here.

<u>Fierro</u> is similarly readily distinguishable. There, the court held that plaintiff suffered adverse employment action in a Section 1983 case alleging a First Amendment violation, and applied the standard applicable thereto. <u>See</u> <u>Fierro</u>, 591 F. Supp. 2d at 444. Aside from the fact that the claim alleged was different, plaintiff in <u>Fierro</u> was held to have been subject to adverse employment action because he suffered a loss in vacation days, was directed to perform manual labor, and was transferred to a school where he no longer had his own office, parking spot, computer, or phone. <u>Id</u>. Additionally, plaintiff in <u>Fierro</u> was transferred to a high school "that was known to be one of the most dangerous schools in New York state." <u>Id</u>. at 436. Here, Plaintiff's allegations fall far short of those alleged in any cases upon which she relies. Instead, her claims are precisely the type of complaints that are consistently held to fail to allege adverse employment action.

For the foregoing reasons, the Court holds that Plaintiff has failed to come forward with facts that would allow a rational factfinder to conclude that she was subject to any adverse employment action. As such, she fails to establish a <u>prima</u> <u>facie</u> element of her case, and her Section 1983 Equal Protection cause of action must be dismissed.

B.    Plaintiff Fails to Show Discriminatory Intent or an Inference Thereof

Even if Plaintiff's various complaints constituted adverse employment action, she fails to show either discriminatory intent, or an inference thereof.  Thus, Plaintiff has come forward with no direct evidence that any decision made with respect to her employment was in any way based upon her gender. Nor does she show treatment different from similarly situated teachers falling outside of her protected category.  Indeed, Plaintiff can point to no other teacher, male or female, pregnant or not, who was granted the assignments she requested.

Plaintiff not only fails to refute, but agrees there is no issue of fact as to the District's allegations regarding the 2009 decision to swap Plaintiff's teaching position with that of Casale. Thus, Plaintiff points to no discriminatory animus as to the initial decision to maintain leave replacement Lott in her High School position and move Casale – a female teacher on leave who returned to her position earlier than Plaintiff – to teach at the JHS.

Plaintiff's reference to the 2010 teaching assignment granted to Falcone falls short. While Falcone was assigned to teach a split schedule, the evidence shows that Falcone taught only French during the school year at issue, and that there was no need for a full-time Spanish teacher at the JHS at the time of Plaintiff's 2010 request.  Nor do Plaintiff's allegations regarding the denial of a requested split schedule raise an inference of discrimination. First, she can point to no comparator. Plaintiff's reference to a teacher hired to teach three JHS classes during a single school year is inapposite because that teacher was hired to teach on a part-time basis.  Plaintiff, on the other hand and, as conceded in the McIntyre Declaration, was assigned a full High School schedule.

Additionally, with respect to any claim that others were assigned a split schedule while Plaintiff was not, Favorito refutes neither the District's stated difficulty in obtaining a leave

replacement teacher for a split schedule, nor the fact that split schedules are disfavored in general. Such schedules are, as noted by the District and uncontroverted by Plaintiff, disruptive because they require travel, reporting to different supervisors, and interfere with a teacher's ability to participate in a common planning period. Plaintiff's failure to come forward with evidence of discriminatory intent or similarly situated employees outside of Plaintiff's class who were treated differently, is as fatal to her claim as her failure to show adverse action. See Valenti v. Massapequa Union Free Sch. Dist., 2012 WL 1038811* 12 (E.D.N.Y. 2012).

It is further worth noting that Plaintiff not only fails to show discriminatory intent, the evidence before the Court shows quite the opposite. Indeed, there is evidence that the District, although not required to, attempted to assign Favorito a personally convenient schedule. Thus, as noted, Ammirato tried to ease Plaintiff's post-maternity leave return by acknowledging the difficulty from a "mommy perspective," and tried to assign Favorito to an early "prep" period. There is also evidence that Plaintiff was granted requests to leave early so that she could attend events at her daughter's school. Far from supporting an inference of discrimination, the evidence shows that the District engaged in what would prove to be a thankless attempt to accommodate Plaintiff's schedule.

In sum, the extensive record before the Court reveals that Plaintiff's career-long record of complaints, taken apart or together, cannot support her burden of coming forward with the prima facie elements of either adverse employment, or an inference of discrimination. Defendants are therefore entitled to the entry of summary judgment on Plaintiff's Equal Protection claim. In view of the fact that Plaintiff's prima facie case of discrimination fails, her Section 1983 Monell claim suffers the same fate.

The Court turns now to discuss the elements and merits of Plaintiff's Title VII claim of a gender-based hostile environment.

IV.     Stating a Title VII Hostile Environment Claim

Plaintiff's hostile environment claim is brought pursuant to Title VII. To establish that claim, Plaintiff must show that Defendants' conduct was objectively and subjectively hostile or abusive, and that such environment existed because of her gender. Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007); see Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). In determining whether conduct rises to the level of a hostile environment courts consider: (1) the frequency and severity of the discriminatory conduct; (2) whether it was physically threatening or humiliating, or a mere offensive utterance; (3) whether it unreasonably interfered with plaintiff's work, and (4) any alleged psychological harm. Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002); Sotomayor, 862 F. Supp.2d at 260. While single incidents of harassment generally do not create a hostile work environment, a plaintiff may nevertheless survive summary judgment in a case involving an allegation of a single instance of harassment by showing that it is sufficiently severe. Summa v. Hofstra University, 708 F.3d 115, 126 (2d Cir. 2013).

V.      Disposition of the Motion as to the Title VII Hostile Environment Claim

Plaintiff's hostile environment claim is based upon allegations of gender-based mistreatment by Murphy, Castro, Conlon, and Ammirato. Additionally, Plaintiff relies upon the teaching assignments referred to above as hostile behavior. Whether considered alone or together, no facts alleged by Plaintiff rise to the level of a hostile environment sufficient to survive summary judgment.  Nor does any conduct alleged appear to be based upon Plaintiff's female gender. Instead, Plaintiff refers to nothing more than a handful of arguably negative

isolated incidents -- separated by periods of years and unrelated to her gender -- that come nowhere near the level of conduct necessary to state a hostile environment cause of action.

Plaintiff's reference to Principal Murphy acting aggressively, and seeking to assert his authority are plainly insufficient. First, it is not surprising that a person with authority (such as a school principal) would, in fact, chose to assert such authority. Even if Murphy was rude, such behavior does not state a hostile environment cause of action. Additionally, and perhaps more importantly, there is no evidence that any such conduct was based upon Plaintiff's gender. Moreover, Murphy never gave Plaintiff anything less than a positive evaluation.

Plaintiff's allegations regarding Castro, Conlon, and Ammirato similarly fail to state a claim. Castro took over for Murphy as Plaintiff's supervisor and High School Principal. The record contains no reference to any negative interaction between Castro and Plaintiff, and Castro gave Plaintiff a satisfactory performance evaluation. Conlon, who was responsible for scheduling Plaintiff's performance evaluation, appears to have gone out of her way to accommodate Plaintiff. She re-scheduled an observation previously scheduled to take place when Plaintiff was ill, and advised her of a two-week period during which she might be observed. Like other administrators, Conlon gave Plaintiff satisfactory ratings. Additionally, Plaintiff and Conlon appear to have enjoyed a positive personal relationship, evidenced by the fact that Plaintiff invited Conlon to Plaintiff's daughter's birthday party.

Plaintiff devotes much of her hostile environment allegations toward Ammirato's alleged conduct. [6] As described above, Plaintiff refers to Ammirato's overall negative "vibe" and her micromanagement of Plaintiff. Plaintiff claims the "donut incident," and Ammirato's failure to

---

[6]     It does not appear to any degree of certainty that Ammirato was Plaintiff's supervisor, and the Court makes no such finding herein. However, even assuming that Ammirato supervised Plaintiff, the record is insufficient to state a hostile environment claim.

send a department-wide email to staff regarding the 2013 death of Plaintiff's father, as evidence of a hostile environment. Pl. 56.1 ¶ 479-81. As with other individuals, Plaintiff can point only to isolated incidents with no evidence that any such conduct was based upon Plaintiff's gender.

The Gil Declaration, submitted to support Plaintiff's claim as to Ammirato, even taken as completely true, does nothing to change the Court's conclusion. As noted, Gil refers to two incidents involving Ammirato. The first incident does not relate to Plaintiff. The second incident might, at best and as interpreted by Gil and Favorito, show some dislike for Plaintiff. Even if so interpreted, it does not amount to the type of discriminatory conduct that can be described as altering the terms of Plaintiff's employment.

Moreover, the record as a whole, including Plaintiff's own testimony, defeats her hostile environment claim. Indeed, the record is replete with evidence that Defendants treated Plaintiff fairly, and that relations between Plaintiff and the individuals alleged to have been harassers were cordial. Thus, in addition to the positive interactions referred to above between Conlon and Plaintiff, there is evidence of several occasions when Ammirato was nothing less than accommodating to Plaintiff. Plaintiff does not dispute that Ammirato assisted Plaintiff in obtaining permission from Conlon to leave school early so that Plaintiff could attend an event at her daughter's school. Def. 56.1 ¶331-33. Further, in addition to acknowledging the difficulties of scheduling from a "mommy" perspective, as referenced above, Ammirato wished Plaintiff good luck with a sick child and told Plaintiff to be sure and take "lots of pictures" at her daughter's Christmas show. Def. 56.1 ¶ 340; 344. Finally, as to performance reviews, Ammirato gave Plaintiff satisfactory performance ratings, and Plaintiff took no issue with such ratings. Def. 56.1 ¶ 365-66.

In sum, none of Plaintiff's allegations regarding treatment received while teaching at the District, taken apart or together, set forth a prima facie case of a hostile environment. As such, Defendants are entitled to summary judgment on Plaintiff's Title VII cause of action.

VI.    Section 1988 Attorneys' Fees

In addition to moving for summary judgment, Defendants move for an award of prevailing party attorneys' fees pursuant to 42 U.S.C. §1988 ("Section 1988"). See 42 U.S.C. §1988. Such fees are properly awarded "only when the plaintiff's 'claim was frivolous, unreasonable, or groundless, or the plaintiff continued to litigate after it clearly became so." Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422 (1978); see Sista v. CDC Ixis North America, Inc., 445 F.3d 161, 178 (2d Cir. 2006) (high standard applicable to a defense fee award serves to "avoid chilling the initiation and prosecution of meritorious civil rights actions") (citation omitted).

A defendant seeking a Section 1988 award of fees must show more than a grant of summary judgment based upon the record before the court. Indeed, the mere fact that the defendant prevailed does not mean that plaintiff's the action was "unreasonable or without foundation." Christiansburg, 434 U.S. at 421-22. Ultimately, a defendants' burden of establishing that a claim was "frivolous, unreasonable, or groundless" is a heavy one, and "it is very rare that victorious defendants in civil rights cases will recover attorneys' fees." Sista, 445 F.3d at 178; see Romain v. Capital One, N.A., 2014 WL 5470808 *3 (E.D.N.Y. 2014) (characterizing standard established by Christianburg as "difficult to meet").

Defendants' summary judgment memorandum of law devotes approximately one half of one page to the argument that an award of Section 1988 fees is appropriate. While the length of Defendants' argument is not dispositive (and may very well have been driven by court-imposed

page limitations) their attorneys' fee argument relies only on the facts set forth in support of the motion for summary judgment. Thus, Defendants argue, essentially, that since they are entitled to summary judgment, they are equally entitled to an award of fees. In light of the precedent described above, the Court holds that Defendants have not established their entitlement to such an award.

The Court recognizes the difficulty in fully briefing a fee motion along with a summary judgment motion. Perhaps more importantly, judicial economy is likely better served by the making of a separate post-summary judgment motion for fees. Accordingly, this Court recommends that the Section 1988 motion be denied without prejudice to the making of a separate motion at a later date. Accord Murphy v. Board of Educ. of Rochester City School Dist., 273 F.Supp.2d 292, 327 n.30 (W.D.N.Y. 2003) (deferring decision on post-summary judgment fee motion, in the interests of judicial economy, pending the outcome of any appeal); Gotbetter v. Port Authority of New York and New Jersey, 2000 WL 328044 *6 (S.D.N.Y. 2000) (noting that defendants raised "perfunctory and undeveloped" fee argument only in closing paragraph of summary judgment memorandum of law, and denying without prejudice to filing separate motion); Strong v. Board of Educ. of Uniondale Union Free School Dist., 789 F. Supp. 99, 100 (E.D.N.Y. 1991) (noting that Section 1988 motion for fees was held in abeyance pending appeal of grant of summary judgment).

CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Defendants' motion for summary judgment, appearing as Docket Entry No. 31 herein, be granted in its entirety. The Court further recommends that the Defendants' motion for attorneys' fees be denied at this time without prejudice to the making of a motion at the conclusion of all proceedings herein.

## OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF.  Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

Dated:  Central Islip, New York
      July 10, 2015

                                           /s/ Anne Y. Shields
                                           Anne Y. Shields
                                           United States Magistrate Judge